COMMONWEALTH *vs*. EUGENE CARACINO.

No. 91-P-1069.

Middlesex. October 5, 1992. - January 5, 1993.

Present: KASS, SMITH, & IRELAND, JJ.

*Child Abuse. Rape. Indecent Assault and Battery. Evidence*, Fresh complaint. *Practice, Criminal*, Disclosure of evidence.

At the trial of indictments for indecent assault and battery on a child and for rape of a child, the trial judge's admission of the fresh complaint testimony of the child's mother and of a child interview specialist to whom the child had spoken in a district attorney's office was a proper exercise of discretion in light of the circumstances. [789-791]

At the trial of indictments for indecent assault and battery on a child and for rape of a child, fresh complaint testimony of a child interview specialist to whom the child had spoken in a district attorney's office, describing details not mentioned by the child in her testimony, posed no substantial risk of a miscarriage of justice in the cirumstances. [791-792]

The judge in a criminal case did not err in denying the defendant's pretrial motion to exclude a statement made by the defendant, and his subsequent motion for a mistrial or, in the alternative, an exclusion order, based on the late disclosure of the statement by the Commmonwealth, where there was no showing that the defendant was prejudiced by the delayed disclosure. [792-794]

INDICTMENTS found and returned in the Superior Court Department on May 15, 1990.

The cases were tried before *Barbara A. Dortch*, J.

*David Shaughnessy* for the defendant.

*Catherine E. Sullivan*, Assistant District Attorney, for the Commonwealth.

IRELAND, J. The defendant was found guilty by a jury on three indictments for indecent assault and battery on a child, G. L. c. 265, § 13B, and three indictments for rape of a child, G. L. c. 265, § 23. On appeal, he claims that (1) under existing fresh complaint doctrine the fresh complaint

witnesses should not have been permitted to testify to the statements made by the complainant because they were involuntary; (2) the judge erred by allowing fresh complaint testimony which exceeded the complainant's own testimony; and (3) the judge erred in denying the defendant's pretrial motion to exclude an inculpatory statement made by the defendant, and his subsequent motion for a mistrial, or in the alternative, an exclusion order, based on the late disclosure of the statement by the Commonwealth.[1] We affirm.

*The facts.* The complainant is the defendant's five year old niece. The complainant's mother and the defendant's wife are sisters. The complainant frequently visited the defendant's home where she spent time with the defendant, his wife, and their two daughters.

On February 27, 1990, the complainant told her father that on her visits with the defendant, he touched her vagina and her anus with his hands, licked her vagina and anus, and wanted her to lick his penis. Upon hearing this, her father telephoned his wife and asked the complainant to repeat to her mother what she had told him. The child did so.

The complainant's mother arranged for the complainant to be seen by her pediatrician the next day. No physical evidence of sexual abuse was found. She was next seen by a child interview specialist of the district attorney's office. In the second interview with the specialist, in response to questions, the complainant stated that the defendant had penetrated her vagina and anus with his penis and his hand, that he licked her vagina and anus, and made her touch his penis with her hand. She used anatomically correct drawings to illustrate the acts, and she indicated that the acts happened more than once, during a one-year period, from January, 1989, to February, 1990.

---

[1] A principal additional contention of the defendant, that the fresh complaint doctrine should be abandoned or, in any event, modified to exclude details, has been decided — adversely to the defendant — by intervening decisions. See, notably, *Commonwealth* v. *Licata*, 412 Mass. 654, 658, 660 (1992).

At trial, the complainant testified that the defendant put his hand inside her vagina and anus and touched her vagina and anus with his tongue on several occasions. She used anatomically correct dolls to demonstrate the acts. She also testified that the defendant had her touch his penis. The complainant's mother and the child interview specialist testified to the details of the complaint. The specialist also testified that the child reported penile penetration. In his defense, the defendant testified that he never touched the complainant inappropriately. He also said that he was never alone with the child on the most recent incident of the alleged abuse on February 26, 1990.

1. *Voluntariness of the fresh complaints.* The defendant argues that under existing fresh complaint doctrine, the fresh complaint testimony in this case should not have been admitted because the statements made by the complainant to the fresh complaint witnesses were involuntary. Specifically, the defendant argues that the statements made to the complainant's mother were coerced by the child's father, and that the statements made to the specialist were involuntary since they were made in response to a number of pointed questions about the abuse.

In cases involving child sexual abuse, courts are flexible in applying the fresh complaint doctrine. *Commonwealth* v. *Amirault*, 404 Mass. 221, 229 (1989). *Commonwealth* v. *Adams*, 23 Mass. App. Ct. 534, 536 (1987). For example, the "natural fear, ignorance, and susceptibility to intimidation that is unique to a young child's make-up," *Commonwealth* v. *Amirault*, 404 Mass. at 229, require the trial judge to consider a variety of factors in determining whether the complaint of sexual assault was reasonably prompt. Such factors include "the child's age, . . . whether the perpetrator used threats or coercion, and whether the perpetrator is a relative or close friend of the child." *Commonwealth* v. *Dockham*, 405 Mass. 618, 626 (1989). *Commonwealth* v. *Gardner*, 30 Mass. App. Ct. 515, 524-525 (1991). See also *Commonwealth* v. *Dion*, 30 Mass. App. Ct. 406, 413-414 &

416 App. B (1991) (summarizing factors relevant to child complainants).

The factors considered in assessing the promptness of a child's complaint of sexual abuse are relevant to assessing the voluntariness of the child's disclosure. In cases of child victims of sexual abuse, statements made in response to questions may be sufficiently voluntary so as to satisfy the requirements of the fresh complaint doctrine. See *Commonwealth* v. *Ellis*, 319 Mass. 627, 630 (1946) (statements did not cease to be voluntary merely because they were given in response to leading questions); *Commonwealth* v. *Hanger*, 357 Mass. 464 (1970) (upholding voluntariness of complaint made in response to questions). See also *Commonwealth* v. *Tingley*, 32 Mass. App. Ct. 706, 709 (1992) (mother's inquiry why child didn't want her father to see her undress was sufficiently broad that the child's response was spontaneous). *Commonwealth* v. *Davids*, *ante* 421, 425-426 (1992) (complaint was voluntary where complainant related vivid details which were not suggested or implicit in the questions posed to him).

The complainant in this case was little more than four years old at the time she revealed to her father, mother, and the specialist what had happened. The sexual abuse was perpetrated by her uncle, who told her "not to tell" about the incidents. The child's initial disclosure to her father was entirely spontaneous. When the child was told to repeat the statement to her mother on the telephone, she repeated almost precisely what she had told her father only minutes before. Without other indicia of intimidation, asking a child to repeat a story she has just told does not have the arm-twisting ingredient inherent in coercion. The complainant's statement to her mother, therefore, was voluntary.

As for the questions posed to the complainant by the specialist, they dwelled on details about facts which she had already revealed in her statements to her parents. The complainant was shy and reticent about discussing the details of the incidents. The specialist's questions were intended to facilitate and focus the child's report. The child's responses to

the questions do not indicate that she was acquiescing to ideas suggested to her. See *Commonwealth* v. *Fuller*, 399 Mass. 678, 682 (1987) (three year old child's response to mother's inquiry about whether the defendant had touched her was spontaneous); *Commonwealth* v. *Brown*, 413 Mass. 693 (1992) (three and one-half year old child's response to physician's inquiry about who hit her was spontaneous). The trial judge's admission of the fresh complaint testimony of these witnesses was a proper exercise of discretion in light of the circumstances. See *Commonwealth* v. *Amirault*, 404 Mass. at 229.

2. *Scope of the fresh complaint testimony.* The defendant claims that the specialist's testimony described penile penetration not mentioned by the complainant in her testimony. Accordingly, the defendant argues, the jury may have improperly relied upon the evidence of penile penetration testified to by the fresh complaint witness to support its guilty verdicts. Under the fresh complaint doctrine, "only those details to which the victim has testified generally at trial are admissible as corroboration by way of evidence of a prior fresh complaint." *Commonwealth* v. *Licata*, 412 Mass. at 659 n.8. The defendant did not object to the admissibility of the specialist's testimony on the ground that it exceeded the complainant's testimony.[2] Instead, he emphasized its inconsistencies with the complainant's testimony. Accordingly, our review of the issue is limited to whether admission of this fresh complaint testimony created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Snow*, 30 Mass. App. Ct. 443, 447 (1991).

The complainant testified to four separate forms of penetration by the defendant, each of which occurred more than once. She testified that the defendant put his hand inside her vagina and anus, and that he licked her vagina and anus. That testimony, if believed, would support a charge of rape of a child under G. L. c. 265, § 23 (unlawful sexual inter-

---

[2]The defendant did challenge the promptness and voluntariness of the complaint in a pretrial motion for a voir dire of the fresh complaint witness.

course or unnatural sexual intercourse with a child under six-teen years of age). See *Commonwealth* v. *Gallant*, 373 Mass. 577, 584 (1977) (interpreting "unnatural sexual intercourse" under G. L. c. 265, § 23, to include "fellatio, cunnilingus, and other intrusions of a part of a person's body . . . into the genital or anal opening of another person's body"); *Commonwealth* v. *Mamay*, 5 Mass. App. Ct. 708, 710 (1977) (penetration with hand or fingers constitutes "unnatural sex-ual intercourse"). While the fact of penile penetration was not testified to by the complainant, other acts of penetration were. Compare *Commonwealth* v. *Kirouac*, 405 Mass. 557 (1989) (where complainant did not testify to any incidents of penetration, videotaped descriptions of rape offered as fresh complaint evidence were prejudicial). Thus, the fresh com-plaint testimony of the specialist "did not fill in any gaps in the Commonwealth's proof of the essential elements of the crime." *Commonwealth* v. *Tingley*, 32 Mass. App. Ct. at 710. *Commonwealth* v. *Bailey*, 370 Mass. 388, 396 (1976). *Commonwealth* v. *Coleman*, 30 Mass. App. Ct 229, 236 (1991). Furthermore, the details testified to were not so graphic, colorful, or gruesome as to be unfairly prejudicial. *Commonwealth* v. *Adams*, 23 Mass. App. Ct. 534, 537 (1987). There is no substantial risk of a miscarriage of justice.

3. *Delayed disclosure of defendant's statement.* Finally, the defendant argues that the trial judge committed revers-ible error by denying his pretrial motion to exclude a state-ment made by the defendant, and his subsequent motion for a mistrial, or in the alternative, an exclusion order, based on the late disclosure of the statement by the Commonwealth. He points to the Commonwealth's failure to abide by its agreement to provide the defendant with the substance of all oral statements made by the defendant which would be intro-duced at trial. One year prior to trial, the Commonwealth provided the following oral statements: (1) in an interview with Detective Munger on March 12, 1990, the defendant said words to the effect that: "Why would I do a kid if I could go downtown for $100 and do a kid there?" The de-

fendant's statement was not recorded in the detective's police report; and, (2) in a conversation with the complainant's mother, on the same day, the defendant said words to the effect that: "Why do this to me? . . . Maybe it was the way I picked [the child] up. Why do this to me?"

The weekend before trial the Commonwealth notified defense counsel of an additional statement the defendant made to the complainant's mother during the same conversation: "Why would I want to do her when I can go in town and do any woman for $100." Prior to trial, defense counsel moved to exclude the statement, based on its late receipt and the prejudicial nature of the information. The Commonwealth reported that it had just learned of the statement the weekend before trial and shared the information with the defendant immediately. The judge denied the defendant's motion.

At trial, the complainant's mother testified to the statement over the defendant's objection and motion to strike. On cross-examination, she was asked when she first told anyone about the "$100 conversation." She replied that she told a prosecutor (not the trial prosecutor) on her first visit to the district attorney's office over a year before the trial. The defendant then sought a mistrial or a delay in order to question the assistant district attorney to whom the complainant's mother allegedly gave the statement. Both requests were denied.

When a defendant claims a delayed disclosure of unexpected testimony, he must show prejudice in order to have the testimony struck or a mistrial declared. *Commonwealth v. Cundriff*, 382 Mass. 137, 151 (1980), cert. denied, 451 U.S. 973 (1981). In evaluating prejudice to the defendant, the judge must determine whether the disclosure was sufficiently timely that it allowed the defendant to make effective use of the evidence in preparing and presenting his case. *Commonwealth* v. *Baldwin*, 385 Mass. 165, 175 (1982). The defendant must suffer prejudice caused by the consequences of the delay itself, not merely the impact of the substance of the disclosure. *Ibid.*

Commonwealth *v.* Caracino.

There was no prejudice here because the substance of the "$100 statement" was disclosed to the defendant one year prior to trial, and was testified to by Detective Munger at trial. Furthermore, the trial judge found that the defendant's counsel had an opportunity, during the weekend before the trial, to review the statement. The defendant failed to show how he "would have altered any tactic" if the disclosure had been made sooner. See *Commonwealth* v. *Pizzotti*, 27 Mass. App. Ct. 376, 381 (1989).

Finally, the judge found no bad faith on the part of the prosecution.[3] See *Commonwealth* v. *Costello*, 392 Mass. 393, 400 (1984) (evidence properly admitted where "prosecution played an apparently blameless role in the delay"). Compare *Commonwealth* v. *Gliniewicz*, 398 Mass. 744, 749 (1986) (prejudice found where Commonwealth's violation of pretrial discovery agreement resulting in the destruction of physical evidence was "intentional or at least condoned by the Commonwealth"). The defendant was not prejudiced by the delayed disclosure.

*Judgments affirmed.*

---

[3]The judge credited the prosecutor's account that the prosecution had no record of the statement made to the complainant's mother in its file and that it learned about it only the weekend before the trial. Although the complainant's mother testified that she had told a prosecutor about the statement one year prior to trial, the judge found that she could have been mistaken.